UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL VETERANS LEGAL SERVICES PROGRAM,<br>1600 K Street N.W., Suite 500<br>Washington, DC 20006<br><br>VIETNAM VETERANS OF AMERICA,<br>8719 Colesville Road, Suite 100<br>Silver Spring, MD 20910<br><br>ANGELO O. DURAN, Individually and On Behalf of All Others Similarly Situated,<br>7265 Fortman Terrace<br>Fountain, Colorado 80817<br><br>and<br><br>SCOTT T. FINK, Individually and On Behalf of All Others Similarly Situated,<br>17711 Saint Agnes Way<br>Olney, Maryland 20832<br><br>                 Plaintiffs,<br>   v.<br><br>THE UNITED STATES DEPARTMENT OF DEFENSE,<br>1400 Defense Pentagon<br>Washington, DC 20301-1400<br><br>THE UNITED STATES ARMY,<br>1500 Defense Pentagon<br>Washington, DC 20310<br><br>JOHN MCHUGH, Secretary of the Army,<br>101 Army Pentagon<br>Washington, DC 20310-0101<br><br>THE ARMY REVIEW BOARDS AGENCY,<br>251 18th Street South, Suite 385<br>Arlington, VA 22202-3531 | Civil Action No.  _____ |

THE ARMY BOARD FOR CORRECTION OF
MILITARY RECORDS,
251 18th Street South, Suite 385
Arlington, VA 22202-3531

and

SARAH BERCAW,
Director of the Army Board for Correction of
Military Records,
251 18th Street South, 3d Floor
Arlington, VA 22202-3523

                              Defendants.

## COMPLAINT

Plaintiffs Angelo O. Duran and Scott T. Fink, both individually and in a representative

capacity on behalf of other similarly-situated veterans,  and the National Veterans Legal Services

Program ("NVLSP") and the Vietnam Veterans of America ("VVA") (collectively, "Plaintiffs"),

through counsel, in support of their complaint against the United States Department of Defense,

the United States Army, John M. McHugh, Secretary of the Army, the Army Review Boards

Agency, the Army Board for Correction of Military Records, and Sarah Bercaw, Director of the

Army Board for Correction of Military Records, allege the following facts:

## INTRODUCTION

1.      It seems a simple proposition that the men and women who serve our country

deserve to be treated respectfully and fairly, as part of our gratitude for their service.  Indeed,

this past Veterans Day, President Obama reminded us of our moral and legal obligations to

those individuals who have put their lives at risk to protect us:

> Today, we are reminded of our solemn obligation:  to serve our veterans as well
> as they have served us. . . . [W]e must support their transition and make sure they

have access to the resources and benefits they have earned. . . . As a Nation, we must ensure that every veteran has the chance to share in the opportunity he or she has helped to defend.[1]

2.      This action arises from Defendants' failure to fulfill their legal obligations to thousands of our Nation's veterans.  Specifically, it details the failure of the Army Board for Correction of Military Records ("ABCMR") to provide board review of thousands of veterans' applications for correction of their military records.

3.      A large number of veterans return from the battlefield to their civilian lives with military records that are sullied by errors or injustices.  These errors or injustices include erroneous discharge characterizations (for instance, Undesirable Discharges that should be upgraded because they are related to undiagnosed PTSD), inaccurate active-duty service times, incorrect disability ratings, and wrongful failure to promote, among others.  By definition, these errors or injustices are not the fault of the veterans who must live with their damaging effects.

4.      The negative effects of errors in these records seriously impinge on the rights of these veterans.  Depending on the errors to be corrected, veterans may be denied government employment and cut off from benefits, such as disability compensation, health benefits, education benefits, a military burial, and benefits for surviving family members.  They may also have difficulty finding post-military employment in the private sector, either because of the erroneous character of their military discharge, or because they are denied adequate medical care for the injuries they sustained during their service as a result of the errors or injustices in their military records.  These negative consequences of record errors take a profound toll, not just on the physical and mental health and well-being of our veterans, but on that of their families as well.

---

[1] Presidential Proclamation—Veterans Day 2014, accessible at http://www.whitehouse.gov/the-press-office/2014/11/07/presidential-proclamation-veterans-day-2014.

5.     In an effort to redress the serious issues that arise when military records contain errors or should otherwise be remedied for equitable reasons, Congress passed 10 U.S.C. § 1552 following World War II.  The statute enables the Secretary of each military department to modify the record of any current or former member of that department if "necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).  The Army Board for Correction of Military Records ("ABCMR") was established to consider and act upon correction requests of Army veterans and service members.

6.     Reflecting Congress's desire that veterans with erroneous or unjust records have a real, available remedy, the ABCMR's authority is extremely broad and includes the ability to:

- Upgrade all less than honorable discharges, including a bad-conduct discharge or dishonorable discharge, issued by sentence of a general court-martial;

- Change the basis for a discharge;

- Reinstate a veteran to military service;

- Void a discharge by changing its date to show completion of the normal term of service (such action may also result in back pay and allowance);

- Increase or change active-duty service time, which, in some cases, will create eligibility for VA benefits or military retirement;

- Order a promotion;

- Change the reason for discharge to medical separation or medical disability retirement;

- Change the disability rating assigned by a Physical Evaluation Board ("PEB") for conditions found by the PEB to render the servicemember unfit for continued active duty service.

7.     Notably, § 1552 specifically states that "such corrections shall be made by the Secretary acting through boards of civilians."  10 U.S.C. § 1552(a)(1).

8.     Over the years, in an effort to satisfy the ABCMR decision-making timeliness requirements set by Congress, the ABCMR began to take shortcuts in the way it decided

applications.  First, in a 2004 lawsuit[2] similar to the instant action, the plaintiff challenged the practice of the ABCMR of refusing to send reapplications to the duly appointed board of civilians that serve on the ABCMR and instead delegating the decision-making on such requests for corrections to the ABCMR staff.  This Court held that 10 U.S.C. § 1552 requires the "ABCMR itself, not staff members" to adjudicate requests for reconsideration of decisions regarding applications for correction.[3]  In that action, the Secretary of the Army did not even contest the issue presented in this case—that the civilian Board members of the ABCMR were required to adjudicate underline original applications for correction.[4]

9.      In the years since this Court decided *Lipsman*, the ABCMR has regressed to assigning initial applications to its staff for a decision, despite the clear mandate in the *Lipsman* decision to the contrary.  Specifically, as set forth in this complaint, Specialist Angelo Duran and Staff Sergeant Scott Fink, decorated war veterans, each applied to the ABCMR to correct their military records.  Their applications were denied, not after consideration by the ABCMR civilian board, but through action by the ABCMR staff.

10.     The ABCMR staff sent letters to Messrs. Duran and Fink informing them their applications would not be considered because, in the opinion of the ABCMR staff, the applications did not "contain sufficient documentation to support their requests."  These letters did not explain the respect(s) in which the supporting materials Messrs. Duran and Fink included with their applications were deficient.  They stated that "in order for the ABCMR [board] to consider your application, you need to provide all Army medical records that will substantiate your request," without explaining what types of Army medical records would

---

[2] *Lipsman v. Secretary of the Army*, 335 F. Supp. 2d 48, 50 (D.D.C. 2004).
[3] *Id.* at 53.
[4] *Id.*

satisfy this standard.  These staff denials helped the ABCMR meet the decision-making

timeliness requirements set by Congress by removing these two applications from the queue

line of applications awaiting review by a panel of three civilian ABCMR board members.  The

experience of Messrs. Duran and Fink with the ABCMR is representative of literally thousands

of veterans applicants.

11.     This action challenges the ABCMR's failure to send applications to the civilian

board members for review despite their obligation to do so pursuant to the plain language of

10 U.S.C. § 1552 and this Court's decision in *Lipsman*.  It further challenges the ABCMR's

failure to publish the guidelines by which the ABCMR evaluates applications.  Plaintiffs seek to

compel the ABCMR, and the agencies and individuals responsible for the ABCMR, to meet

their legal obligations to our veterans, by respectfully requesting:

(1)     A declaratory judgment that the failure of the ABCMR to provide Board consideration of applications violates 10 U.S.C. § 1552, the statute governing ABCMR operations, and the Due Process Clause of the Fifth Amendment to the United States Constitution;

(2)     An Order compelling defendants to refer all future applications for correction of military records to the members of the Board of the ABCMR for decision as required by law;

(3)     An Order voiding ab initio all decisions on applications to the ABCMR made by staff (including the denials of the Individual Defendants' applications), without being adjudicated by ABCMR Board members where required under 10 U.S.C. § 1552, and requiring the ABCMR to forward all of these applications to ABCMR board members for decision unless, after appropriate notice to the applicant, the applicant opts to withdraw his or her application;

(4)     An order compelling the ABCMR to publish the guidelines by which it evaluates applications, pursuant to its obligations under 5 U.S.C. § 552(a)(1)(C) and (D);

(5)     An order compelling the Army to comply with its obligation to assist veterans in gathering the records needed to assist the ABCMR in conducting a full and fair review of veterans' applications pursuant to 32 C.F.R. § 581.3; and

(6)     Any and all other relief that may be just and proper.

## PARTIES

12.     Plaintiff ANGELO DURAN is an Army veteran.  He is a citizen of the United States and currently resides in Colorado.  He was honorably discharged from the Army on March 31, 2013.

13.     Plaintiff SCOTT T. FINK is an Army veteran, the recipient of a Purple Heart, and a member of the Army National Guard.  He is a citizen of the United States and currently resides in Maryland.

14.     Plaintiff VIETNAM VETERANS OF AMERICA ("VVA") is a non-profit veterans' membership organization whose principal administrative office is in Silver Spring, Maryland.  The VVA has over 74,000 individual members and is the only national Vietnam veterans' organization Congressionally chartered and exclusively dedicated to Vietnam-era veterans and their families.  Among VVA's members are former members of the U.S. Army who have had their applications for correction of their military records rejected without receiving Board review.

15.     Plaintiff NATIONAL VETERANS LEGAL SERVICES PROGRAM ("NVLSP") is a non-profit service organization with its principal administrative office in Washington, D.C.  Founded in 1980, the NVLSP is a not-for-profit organization that aims to ensure that the nation's 25 million veterans and active duty personnel receive the benefits to which they are entitled because of disabilities resulting from their military service to our country.  The NVLSP accomplishes its mission by providing and helping to facilitate the free-of-charge representation of veterans in proceedings before the military review boards, military administrative discharge boards, military medical and physical disability evaluation boards, VA

regional offices, the Board of Veterans' Appeals, and the courts that review the decisions of these agencies.

16.     As a direct result of Defendants' actions and failures to act in connection with the processing of applications at the ABCMR, the NVLSP has diverted and devoted, and expects to continue to divert and devote, already scarce resources to provide additional services to veterans harmed by Defendants' actions and failures to act and to the advocates who represent these veterans before the ABCMR.  Since 2007, NVLSP has operated a national pro bono program called Lawyers Service Warriors®.  Through this program, NVLSP screens and places the cases of veterans with volunteer attorneys from private law firms and corporate legal departments throughout the country who represent these veterans for free on, among other things, applications to the ABCMR.  As part of its Lawyers Service Warriors® program, NVLSP provides mentoring services to the volunteer attorneys with whom veterans' cases are placed.  In order to provide effective mentoring to those volunteer attorneys who have represented, currently represent, or will in the future represent veterans applying to the ABCMR, NVLSP has devoted and continues to devote scarce resources to investigating what are the unpublished rules, guidelines and practices under which the ABCMR operates in adjudicating applications, including the extent to, and circumstances under which ABCMR applications are decided by the ABCMR staff, rather than a panel of civilian Board members.

17.     The Defendant UNITED STATES DEPARTMENT OF DEFENSE ("DOD") is the federal department charged with coordinating and supervising all agencies and functions of the government relating directly to national security and the military.  The organizations and functions of the DOD are set forth in Title 10 of the United States Code.

18.     Defendant THE UNITED STATES ARMY is one of three service departments in the Department of Defense.  It has responsibility for the administration, control, and operation of the United States Army (the "Army"), a military organization whose primary responsibility is for land-based military operations.  The civilian head of the Department of the Army is the Secretary of the Army and the highest ranking military officer in the department is the Chief of Staff, unless the Chairmen of the Joint Chiefs of Staff or Vice Chairman of the Joint Chiefs of Staff is an Army Officer.

19.     Defendant John M. McHugh is the SECRETARY OF THE ARMY ("the Secretary") and is named solely in his official capacity.  Mr. McHugh is authorized by statute (10 U.S.C. § 1552)  to act through a board of civilians under procedures established by him, to correct any military record of a former member of the Army when he considers it necessary to correct an error or remove an injustice.

20.     Defendant ARMY REVIEW BOARDS AGENCY ("ARBA") is the highest administrative level of review of personnel actions taken by lower levels of the Army.  It administers three review boards—the Army Board for Correction of Military Records, the Army Discharge Review Board, and the Army Grade Determination Review Board.

21.     Defendant ARMY BOARD FOR CORRECTION OF MILITARY RECORDS ("ABCMR") is the board of civilians established in the Office of the Secretary, which, pursuant to 10 U.S.C. § 1552, considers applications filed before it for the purpose of determining whether an applicant's Army military records should be changed to correct an error or injustice. It is the highest level of administrative review within the Department of the Army.  The ABCMR is located in Arlington, Virginia.

22.     Defendant Sarah Bercaw is DIRECTOR OF THE ABCMR and is named solely in her official capacity.  On information and belief, she is charged with responsibility for the functioning of the Board, including the staff and Board members.  She has her official place of business in Arlington, VA.

23.     The inclusion of each defendant named herein is necessary to afford complete relief, and to avoid multiplicity of actions and the possibility of inconsistent results.

## JURISDICTION AND VENUE

24.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702.  This action arises under the Constitution of the United States, and Plaintiffs seek to redress violations of the Fifth Amendment to the United States Constitution.  Plaintiffs also seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and seek to compel agency action unlawfully withheld or unreasonably delayed pursuant to 5 U.S.C. § 706 (the Administrative Procedure Act or "APA").

25.     Venue is proper under 28 U.S.C. §§ 1402(a) and 1391(e), based on Plaintiff NVLSP's presence in this District.

## FACTUAL ALLEGATIONS

## NATURE OF THE ABCMR AND ITS DECISION-MAKING

26.     10 U.S.C. § 1552 mandates that the Secretary of each military department act "through boards of civilians," under procedures established by the Secretary, to correct any military record of any current or former member of that department when he or she considers it necessary to correct an error or remove an injustice.  Pursuant to this mandate, Defendant Secretary of the Army has established Defendant ABCMR to consider and act on any requests to make such corrections.  *See* 32 C.F.R. § 581.3.

27.     The relief available to former and current Army military personnel through application to the Board is broad and includes the correction of military records: (a) to change the reason for discharge to medical separation or retirement; (b) to reinstate a veteran to military service; (c) to recharacterize a veteran's less than fully honorable discharge; (d) to change the basis for a discharge; (e) to void a pass over of a candidate for promotion; (f) to establish eligibility for pay and/or retirement benefits; (g) to increase or change active-duty service time, which in some cases will create eligibility for VA benefits or military retirement; (h) to change adverse line of duty investigations; (i) to remove statutory bars to veterans' benefits; and (j) to take other actions as may be necessary to correct material error or injustice.

28.     When a veteran or service member submits an application for correction of his or her military record, the ABCMR staff is allowed to make certain, specific procedural determinations before it sends that application to the Board for review.  The ABCMR regulations allow the staff to return an application without action only if:  (i) the applicant fails to complete (e.g., applicant did not specify the correction requested or failed to fill out the whole application) and sign the application; (ii) the applicant has not exhausted all other administrative remedies; (iii) the ABCMR does not have jurisdiction to grant the requested relief (*e.g.*, the applicant has applied to the wrong branch of service); and (iv) in the case of a request for reconsideration, the applicant did not include any new evidence.

29.     In the event the records provided by an applicant are not sufficient for the Board to make a "full and fair review" of an application, the ABCMR staff is to obtain military records from the Army records holding agency on behalf of the applicant.  *See* 32 C.F.R. § 581.3(b)(5)(iii).

30.     In situations in which an advisory opinion would be beneficial to the ABCMR as it makes its decision, the ABCMR is to request advisory opinions from the Army Staff agencies and commands.  The commanders of Army Staff agencies and commands are required to: (i) furnish advisory opinions on matters within their areas of expertise upon request of the ABCMR; (ii) obtain additional information or documentation as needed before providing the opinions to the ABCMR; and (iii) provide records, investigations, information, and documentation upon request of the ABCMR.

31.     In practice, however, the ABCMR relies on its staff members to do much more than take the actions specified in the applicable Army regulations.  On information and belief, the ABCMR has its staff analyze cases and make determinations regarding when an advisory opinion is necessary, and whether the evidence submitted by applicants is sufficient to support their requests.  In the cases that actually reach the Board, the ABCMR simply votes on the analysis and case materials put together by staff.

32.     Although statutory authority (10 U.S.C. § 1552) clearly mandates that the Board consider and adjudicate applications for correction of military records, the Board has failed to do so, effectively illegally delegating to its staff these responsibilities by allowing the staff to determine whether the evidence submitted by applicants supports their requests.

33.     On various occasions, individual members of the putative plaintiff class have applied to the Board for consideration of their applications for correction of their military records.   In each case, the members of the putative class submitted completed and signed DD Form 149 applications and supporting documentation.

34.     Following receipt of these applications for correction of their Army military records, the ABCMR informed some members of the putative class that the staff of ABCMR

had determined that their applications should be denied without prejudice to submission of a future application and indicating to the applicant that he or she had not provided documentation sufficiently substantial or relevant to even merit consideration by the Board.  Other members of the putative class may not even have been informed that their applications were denied by the staff, as opposed to the Board.

35.     Members of the VVA and other veterans who apply for correction of their military records will continue to be subjected to the same staff rejections unless Defendants are once again enjoined from this practice, as they were in the *Lipsman* case.

36.     The denial letters sent by the ABCMR staff to the two named individual Plaintiffs state that the applicants "must provide all Army medical treatment records" to substantiate their requests.  (Ex. A and B, Fink and Duran Denial Letters.)  However, it is the ABCMR's responsibility—not the applicant's—to arrange for the applicant's military records to arrive at the ABCMR.  The ABCMR's regulations require the ABCMR to request "Army military records" from the records holding agency, thus putting the onus on the ABCMR—not the applicant—to obtain an applicant's records.

37.     The ABCMR's refusal to obtain military records on behalf of applicants also directly contradicts statements on the ABCMR's website that it will obtain records for any applicant.  In a downloadable document, titled "Applicant's Guide for the Army Board of Corrections of Military Records," the ABCMR states that it will obtain an applicant's military record when it receives the DD Form 149:

> You do not need to obtain a copy of your military records from the NPRC to apply to the ABCMR. The ABCMR will obtain your records from the NPRC when your DD Form 149 is received.  Please do not request a copy of your military records from the NPRC at the same time that you submit an application to the ABCMR. This will delay your ABCMR application until the NPRC copies your records for you.

Indeed, DD Form 149, the application form "used by [ABCMR] Board members for review of pertinent information in making a determination of relief through correction of a military record," itself indicates that the ABCMR will obtain military records on behalf of applicants: Item 9 of DD Form 149 states that "[i]f [U.S. Department of] Veterans Affairs records are pertinent, give regional office location and claim number."   Yet despite this clear recognition by the ABCMR that it is obligated to obtain military and VA records on behalf of applicants, it is not currently complying with this duty.

38.     The ABCMR's failure to review applications as required by law, refusal to identify specific documents that must be submitted for review by the civilian boards, and misrepresentation of its obligation to obtain military records on behalf of applicants, stem from a broader issue—namely, that the ABCMR uses nonpublic, undisclosed guidelines that direct its staff to process applications in a manner that meets Congress's timeliness requirements.  These guidelines encourage the use of the so-called "Administrative Close" procedure (denial of applications by staff) as an effective (albeit ultra vires) way to meet the 10-month adjudication deadlines set by Congress, thereby elevating the importance of facially meeting deadlines (albeit in an ultra vires way) at the expense of justice for veteran applicants.

<u>SPECIALIST ANGELO O. DURAN</u>

39.     Specialist Angelo Duran ("SPC Duran") is a 29-year-old decorated veteran of Operation Iraqi Freedom.

40.     SPC Duran was deployed in Iraq from August 8, 2006 to October 21, 2007.

41.     For his service in Iraq, SPC Duran received the Army Commendation Medal, the Army Achievement Medal, the Army Good Conduct Medal, the National Defense Service Medal, the Global War on Terrorism Service Medal, the Iraq Campaign Medal with a Campaign

14

Star, the Army Service Ribbon, the Overseas Service Ribbon, the Combat Infantryman Badge, and the Parachutist Badge.

42.     While in Iraq, SPC Duran had at least eight first-hand encounters with improved explosive devises ("IEDs"), several of which caused him to lose consciousness for brief periods of time.

43.     On or around November 27, 2006, SPC Duran was part of a caravan when the Humvee directly in front of his vehicle went over a landmine.  The landmine exploded, blowing the Humvee up with it.  SPC Duran jumped out of his vehicle to assist the passengers of the Humvee, one of whom was his sergeant major.  SPC Duran attempted to free his sergeant major from the vehicle, but was unable to so.  Following the blast, SPC Duran lost consciousness for approximately one minute and had post-traumatic amnesia for "a couple of minutes."  SPC Duran did not receive any medical attention for this incident.

44.     On or around October 1, 2007, SPC Duran was traveling to Beje for a mission when the vehicle in front of his vehicle was hit with enemy gunfire.  One of SPC Duran's friends was riding in the turret of the vehicle and was killed.  The other vehicles subsequently continued on to Beje to complete the mission.  During the mission, SPC Duran's best friend was shot in the head.  At some point during the same mission, SPC Duran was hit in the head with a fire extinguisher and lost consciousness.  SPC Duran was briefly checked by a medic after this incident.

45.     On or around November 1, 2007, SPC Duran and a friend were assigned to a mission that was to be his friend's final mission before he returned home.  The men were told that a wire was "dead," but instead an IED went off, severing his friend's body in half.  The blast threw SPC Duran against a wall, but he began returning fire.  Just before his friend died,

he asked SPC Duran to "tell my daughter I love her."  SPC Duran received no medical care after this incident.

46.     SPC Duran was exposed to and injured by Rocket Propelled Grenades ("RPGs") and IEDs at least five other times.

47.     SPC Duran completed a Post-Deployment Health Assessment on September 27, 2007.  SPC Duran indicated that he had headaches, that his ears rang, and that he had difficulty sleeping.  He later indicated that he had back pain and still had difficulty sleeping.

48.     After returning to his duty station at Fort Bragg, NC, on May 20, 2008, SPC Duran self-referred for a mental health evaluation at the 82nd Airborne Division Mental Health Clinic.  The clinic provisionally diagnosed SPC Duran with Post-Traumatic Stress Disorder ("PTSD").  The Clinic recommended that SPC Duran not participate in any airborne and live fire operations for 30 days and said that he should be given non-combat duty for the foreseeable future.

49.     On June 5, 2008, civilian psychologist Dr. Oscar R. Franco, Ph.D., diagnosed SPC Duran with PTSD.  Dr. Franco wrote to the Army that "serious consideration should be given to reassigning [SPC Duran] from his current duties, due to his current emotional/mental health needs."  He recommended that SPC Duran be reassigned away from field-related duties. This conclusion was also reached by the 82nd Airborne Division Mental Health Clinic.

50.     SPC Duran suffers from PTSD, knee strain, flash trauma (vision problems caused by viewing explosions), hearing loss, a condition with his hands, and anxiety.

51.     At no point during SPC Duran's service was he referred to a Medical Evaluation Board for a possible medical discharge.

52.     SPC Duran was honorably discharged on April 31, 2013.  The discharge failed to mention SPC Duran's disabilities and gave his reason for separation as merely "completion of required active service."

53.     On April 30, 2013, SPC Duran filed a DD Form 149 with the ABCMR, applying for a correction to his military record to change his discharge to a medical discharge.  In his application, SPC Duran argued, among other things, that in failing to refer SPC Duran to a Medical Evaluation Board before he reached the end of his term of active service, the Army failed to comply with its own regulations.  Had the Army complied, the Medical Evaluation Board would have found SPC Duran unfit for further military service due to his post-traumatic stress disorder and SPC Duran would have been medically retired from the Army pursuant to 10 U.S.C. § 1201.  Being medically retired from the Army would have entitled Duran to receive significant military disability retirement benefits and military health care for him, his spouse, and his children that his current discharge status makes him ineligible to receive.  In connection with his application, Mr. Duran submitted copies of numerous Army medical records.

54.     SPC Duran's application was denied by ABCMR staff without Board review. (Ex. A, ABCMR Response to Duran at 1.)  The only reason provided for the denial was that his application "does not contain any documentation to support your request."  (*Id*.)

55.     Because SPC Duran did not receive a medical discharge, SPC Duran and his family do not receive the quality and degree of medical care to which he is entitled, including military disability retirement benefits and TRICARE health insurance.

STAFF SERGEANT SCOTT T. FINK

56.     Staff Sergeant Scott Fink ("SSG Fink") is an Army National Guard veteran of the Gulf War Era.  SSG Fink is the recipient of a Purple Heart and has served in the Army

National Guard for 17 years.  SSG Fink served from August 29, 1991 to December 6, 1991,
from October 6, 2001 to October 17, 2002, and from January 4, 2005 to June 2, 2006.

57.     SSG Fink served in Iraq from January 4, 2005 to June 2, 2006, where he
participated in numerous combat missions.

58.     While serving his country in Iraq, SSG Fink was in three separate IED attacks
and suffered a severe brain injury.  As a result of these attacks and the stress of his rigorous
combat demands, SSG Fink was ultimately diagnosed with service-connected PTSD.

59.     SSG Fink was placed in the Rear Detachment when his unit was deployed in
2008.  Around this time, SSG Fink's commanding officer informed SSG Fink that he had been
placed on a medical hold pending a Medical Evaluation Board ("MEB"), that he would most
likely receive medical retirement, and that someone would contact him when it was time to
appear before the MEB.  No one ever contacted SSG Fink to attend an MEB hearing or for any
other purpose.  Though SSG Fink contacted his unit approximately every month, he was
provided no additional information.

60.     SSG Fink was placed in the Inactive National Guard on August 27, 2008.  His
transfer papers give "Individual's Request" as the reason for SSG Fink's assignment to Inactive
National Guard—but SSG Fink never asked to be reassigned.  Indeed, SSG Fink was not aware
that he was being reassigned until he received his transfer papers.

61.     Members of the Inactive National Guard do not continue to earn "retirement
points" for their service and are no longer eligible for promotions.  Because SSG Fink must
complete a full 20 years to retire, being placed in the Inactive National Guard after his 17 years
of service precludes him from retiring with full benefits.  Additionally, there are exceptions to
this "20 year" rule for soldiers like SSG Fink, who served more than 15 years before he

sustained injuries that prevented him from continuing his service.  Had SSG Fink gone before the MEB and received a determination that he was medically disqualified from future service for physical or other medical reasons, he would have received full retirement benefits.  As a result of his inaccurate military record, SSG Fink has lost potentially tens, if not hundreds, of thousands of dollars in retirement benefits.

62.     On April 7, 2012, SSG Fink filed a DD Form 149 with the ABCMR, applying for a correction to his military record to allow him to return to service and to finish his remaining three years.  On his form, SSG Fink stated that he was placed in the Inactive National Guard without his knowledge.  His application packet also included his transfer form, which gives as his reason for being transferred as "Individual's Request."

63.     SSG Fink's application was denied by the staff without Board review.  (Ex. B, ABCMR Response to Fink at 1.)  Like SPC Duran, the only reason SSG Fink was provided for the denial was that his application "does not contain any documentation to support your request."  (*Id*.)

## CLASS ACTION ALLEGATIONS

64.     This is a class action seeking equitable relief under Rule 23(b)(2) of the Federal Rules of Civil Procedure to compel agency action unlawfully withheld under the Administrative Procedure Act and for violations of the Fifth Amendment.

65.     Individuals from the United States Army, including Reserve units and the Army National Guard, fall within the class proposed by this complaint.

66.     The proposed class includes all persons who have had an application returned by the staff of the ABMCR for any reason beyond those specifically set forth in 32 C.F.R. § 581.3(e)(1).

67.     Plaintiffs are informed and believe, and on that basis allege, that this class

consists of at least 40,161 persons. This number is derived from a document received from the

ABCMR via a FOIA request indicating that at least 40,161 applications were internally marked

as "Administrative Closed and Not Boarded" during the period from February 27, 2009 to

March 31, 2014.

68.     There are questions of law and fact common to the proposed class, including but

not limited to:

A.     Whether the civilian Board members of Defendant ABCMR failed to

review and adjudicate their applications for correction of military records

as required by 10 U.S.C. § 1552 and 32 C.F.R. § 581.3;

B.     Whether the Defendants unlawfully failed to assist the applicants by

obtaining relevant Army  documents and records in connection with the

review of the class members' applications in contravention of 32 C.F.R.

§ 581.3;

C.     Whether the Defendants violated the rights of the putative class members

by failing to publish the rules and procedures under which the ABCMR

operates in violation of 5 U.S.C. §§ 552(a)(1)(C) and (D); and

D.     Whether Defendants violated class members' procedural due process

rights by failing to provide class members the statutorily mandated board

review as required by 10 U.S.C. § 1552 and 32 C.F.R. § 581.3, by failing

to publish the applicable rules and guidelines governing the ABCMR

process, and by failing to assist class members by obtaining Army

documents and records in connection with the review of class members'
applications.

69.     The claims set forth in this complaint are common to each and every member of
the class.

70.     Plaintiffs are proper representatives of this class of persons because, as
demonstrated herein, Plaintiffs are veterans whose applications for record correction were
denied by staff members, who did not have access to published rules and guidelines under
which the ABCMR operates, and whom the Army failed to assist in obtaining relevant records.
The claims that they assert in this complaint are typical of the claims of all members in the
class.  Upon information and belief, the claims of Plaintiffs are not subject to any unique
defenses nor do any of Plaintiffs' interests conflict with the interests of any other member of the
class.

71.     Plaintiffs contend that the claims set out below are proper for certification as a
class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure.

72.     A class action is appropriate in this action because Defendants, through the
ABCMR, have acted on grounds that apply generally to the class such that final injunctive relief
is appropriate respecting the class as a whole under the provisions of Rule 23(b)(2) of the
Federal Rules of Civil Procedure.

73.     Moreover, a class action is appropriate in this action because the members of the
proposed class are so numerous that joinder of all members is impracticable.

### FIRST CLAIM FOR RELIEF
#### Administrative Procedure Act and Due Process Clause
#### (*For Unlawful Staff Review and Denial of Applications*)

74.     Plaintiffs incorporate by reference the other paragraphs of this complaint as if
fully set forth herein.

75.     The Secretary of a military department "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1).  Such corrections "shall be made by the Secretary acting through boards of civilians of the executive part of that military department." *Id*.

76.     It is thus the duty of the ABCMR members (the "Board") to "[r]eview all applications that are properly before them to determine the existence of error or injustice." 32 C.F.R. § 581.3(b)(4)(i).  The ABCMR members are similarly tasked with denying applications "when the alleged error or injustice is not adequately supported by the evidence, and when a hearing is not deemed proper." 32 C.F.R. § 581.3(b)(4)(iv).  A panel of at least three ABCMR members is required to review each application properly brought before it.  32 C.F.R. § 581.3(e)(3)(i).

77.     The ABCMR staff may return an application without action only if "(i) The applicant fails to complete and sign the application[,] (ii) The applicant has not exhausted all other administrative remedies[,] (iii) The ABCMR does not have jurisdiction to grant the requested relief [, or if] (iv) No new evidence was submitted with a request for reconsideration." 32 C.F.R. § 581.3(e)(1).  Thus, the ABCMR staff may not perform functions statutorily committed to the members, including reviewing applications or denying applications for inadequate evidence.

78.     In unlawful contravention of 10 U.S.C. § 1552 and 32 C.F.R. § 581.3, Plaintiffs' applications and those of the class they represent were not reviewed by the ABCMR members, but rather were returned by the staff of the ABCMR.  Plaintiffs' denial letters cite lack of documentation to support Plaintiffs' requests as the reason for the applications' denials.  This

failure of the civilian boards to review applications constitutes agency inaction reviewable by this Court under 5 U.S.C. § 704.

79.     Because Plaintiffs' applications were improperly reviewed and denied by the staff, Plaintiffs and the members of the class they represent were denied the review by the civilian boards of their applications for correction of their military records to which they are entitled.

80.     The ABCMR thus unlawfully failed to review the applications of the Plaintiffs and those equally situated in violation of their legal obligations, and should be compelled to do so pursuant to the Administrative Procedure Act.  5 U.S.C. §§ 701-708.

81.     The ABCMR's unlawful failure to review the applications of Plaintiffs and class members also violates the Due Process Clause of the Fifth Amendment of the U.S. Constitution, which provides that individuals may not be deprived of life, liberty, or property without due process of law.

82.     Due process requires that an administrative agency conduct adjudications in a fair and orderly manner and consistent with the rules and regulations applicable to that agency.

83.     The ABCMR staff may only return an application without action if:  (i) The applicant fails to complete and sign the application; (ii) The applicant has not exhausted all other administrative remedies; (iii) The ABCMR does not have jurisdiction to grant the requested relief; or (iv) No new evidence was submitted with a request for reconsideration.  The ABCMR staff is thus without power to return an application without action for want of additional information.

84.     Plaintiffs and class members were denied their rights to due process in the review of their applications for correction.   Defendants have thus unconstitutionally infringed

on Plaintiffs' life, property and liberty rights protected by the Due Process Clause of the Fifth

Amendment to the United States Constitution, which provides that "No person shall . . . be

deprived of life, liberty or property without due process of law."

## SECOND CLAIM FOR RELIEF
### Administrative Procedure Act and Due Process Clause
**(*For Unlawful Denial of Assistance in Obtaining Army Records Information*)**

85.     Plaintiffs incorporate by reference the other paragraphs of this complaint as if

fully set forth herein.

86.     The ABCMR staff may only return an application without action if:  (i) The

applicant fails to complete and sign the application;  (ii) The applicant has not exhausted all

other administrative remedies; (iii) The ABCMR does not have jurisdiction to grant the

requested relief; or (iv) No new evidence was submitted with a request for reconsideration.  32

C.F.R. § 581.3(e).  The ABCMR staff is thus without power to return an application without

action for want of additional information.

87.     The director of an Army records holding agency is tasked with "[r]equest[ing]

additional information from the applicant, if needed, to assist the ABCMR in conducting a full

and fair review of the matter."  32 C.F.R. § 581.3(b)(5)(iii).  The director is further tasked with

"furnish[ing] all requested Army military records to the ABCMR."  32 C.F.R. § 581.3(b)(5)(ii).

88.     In unlawful contravention of 32 C.F.R. § 581.3, upon information and belief,

ABCMR as a matter of practice fails to fulfill its duty to request assistance from the director of

an Army records holding agency in seeking any records thought lacking from an application for

corrections.  Plaintiffs' applications were returned by the ABCMR staff on the basis that their

applications were purportedly insufficient.  Plaintiffs were not provided any information

regarding which documents were missing, where such documents would be located, or why the

Army records holding agency could not provide such additional information.

89.     Plaintiffs' applications were returned by staff based on the purported lack of information that should have been provided by the Army records holding agency.  This failure to fulfill the legal obligation to obtain records constitutes agency inaction reviewable by this Court under 5 U.S.C. § 704.

90.     Defendants' failure to assist Plaintiffs and the members of the class they represent by seeking records allegedly lacking from their correction applications was contrary to the mandate of Congress and Army regulations and, inter alia, constituted the unlawful denial of their rights in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

## THIRD CLAIM FOR RELIEF
### Administrative Procedure Act and Due Process Clause
### (*For Failure to Publish Rules of Procedure*)

91.     Plaintiffs incorporate by reference the other paragraphs of this complaint as if fully set forth herein.

92.     The ABCMR is an agency subject to the requirements of the APA.  5 U.S.C. § 701(b)(1).  Each agency is required to make available to the public through publication "rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations"  (5 U.S.C. § 552(a)(1)(C)) and "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency" (5 U.S.C. § 552(a)(1)(D)).

93.     The ABCMR maintains an internal guidebook known as the "Screening Team Analyst Resource" that provides rules and policies relating to the approval and denial of applications.  Defendants have not made these rules and policies public, despite their obligation to do so pursuant to 5 U.S.C. § 552(a)(1).  The ABCMR also maintains an internal Handbook

for ABCMR Board Members that gives direction to staff members and ABCMR personnel regarding information to be requested from applicants.  Defendants have not made the rules and policies contained in this handbook public, despite their obligation to do so pursuant to 5 U.S.C. § 552(a)(2)(C).

94.     The ABCMR also directs its staff—rather than the members of its board—to return applications under situations not permitted by 10 U.S.C. § 1552 and 32 C.F.R. § 581.3, such as where an application is missing particular documents.  This policy is a matter described in 5 U.S.C. § 552(a)(1), but has not been made public through publication as required by 5 U.S.C. § 552(a)(1).

95.     Plaintiffs' applications and those of the members of the plaintiff class were returned by staff based on these non-public policies, of which Plaintiffs and the members of the class they represent were unaware.  Nonpublication of these matters constitutes agency action reviewable by this Court under 5 U.S.C. § 704, and violates the mandate contained in 5 U.S.C. § 552(a)(1) that "a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published."

96.     Because the rules were not published, Plaintiffs were denied a fair opportunity to make an effective application for the correction of their military records.

97.     The ABCMR thus unlawfully maintained non-public rules of procedure and returned Plaintiffs' and class members' applications in violation their legal obligations, and should be compelled to publish all relevant rules of procedure pursuant to the Administrative Procedure and Freedom of Information Acts.  5 U.S.C. § 552(a)(1), §§ 701-708.

98.     Defendants' failure to publish the rules of procedure governing the applications of Plaintiffs and class members deprives Plaintiffs and class members of due process of law, as required under the Fifth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that judgment be entered for Plaintiffs and against Defendants as follows:

1.      On the First Claim for Relief, for declaratory and injunctive relief as prayed for above.

2.      On the Second Claim for Relief, for declaratory and injunctive relief as prayed for above.

3.      On the Third Claim for Relief, for declaratory and injunctive relief as prayed for above.

4.      On all claims for relief, for Plaintiffs' reasonable attorneys' fees and costs incurred herein pursuant to 28 U.S.C. § 2412 and any other applicable law.

5.      For such other relief as the Court deems just and proper.

Dated: November 14, 2014

Respectfully submitted,
**MORRISON & FOERSTER LLP**

By: _____

Richard J. Vacura (D.C. Bar # 436669)
John A. Trocki III (*pro hac vice* pending)
Catherine L. Chapple (*pro hac vice* pending)
MORRISON & FOERSTER LLP
1650 Tysons Boulevard Suite 400
McLean, Virginia  22102-4220
Tel:  (703) 760-7764
Email:  RVacura@mofo.com
Email:  JTrocki@mofo.com
Email:  CChapple@mofo.com

Stacey M. Sprenkel (*pro hac vice* pending)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Tel:  (415) 268-6040
Email:  SSprenkel@mofo.com

Kirk A. Sigmon (D.C. Bar # 1021428)
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, D.C.  20006-1888
Tel:  (202) 778-1664
Email:  KSigmon@mofo.com

Barton F. Stichman (D.C. Bar # 218834)
NATIONAL VETERANS LEGAL SERVICES PROGRAM
1600 K Street, NW
Suite 500
Washington, D.C. 20006
Tel:  (202) 621-5677
Email:  bart_stichman@nvlsp.org

*Attorneys for Plaintiffs*